M. O. CALLENDER ET AL., PLAINTIFFS IN ERROR, V.
WILLIAM HORNER, DEFENDANT IN ERROR.

[FILED JUNE 13, 1889.]

Parent and Child. GIFT TO CHILD. A wife and mother made a
gift of a valuable horse to her son, then about twenty-one years
of age. This property was afterwards attached for the debts of
the father. The son thereupon brought an action of replevin
and recovered the possession of the horse, and on the trial the
mother testified that she paid $400 for the horse, "besides the
debt he owed us," and that she "worked hard for it, [the price
of the horse.] I sold potatoes and everything I could sell off the
place;" which testimony was not explained and was undenied.
*Held*, That a judgment in favor of the son was supported by
the weight of evidence, and would not be set aside.

ERROR to the district court for Boone county. Tried
below before TIFFANY, J.

*Robertson & Campbell,* and *C. L. Harris,* for plaintiffs in
error.

*James S. Armstrong, Geo. W. Brown,* and *Harwood,
Ames & Kelly,* for defendant in error.

MAXWELL, J.

The McCormick Harvesting Machine Co. brought an
action by attachment against Robert Horner, and caused
the writ to be placed in Callender's hands, who, as consta-
ble, levied said writ on "one dapple-gray stallion, (Nor-
man,) six years old, weight sixteen hundred pounds."
William Horner thereupon brought an action of replevin,
and obtained possession of the property, and on the trial a
jury was waived, the cause tried to the court, and judgment
rendered in favor of Horner.

The testimony shows that the defendant in error is a son

of Robert Horner and Mary J. Horner, and that about the time of bringing this action he was twenty-two years of age. The testimony also shows that he received the horse as a present from his mother. The mother testifies that the son had been the owner of two colts which had been sold on the father's account. On cross-examination she testifies:

Q. These colts were sold on the Coan chattel mortgage, were they not?

A. Yes, sir; they were sold the same day, but not under the mortgage.

Q. Where did you get this stallion?

A. I got him of Mr. Rogen, after the chattel-mortgage sale.

Q. How long after the foreclosure of the Coan chattel mortgage did you buy him?

A. About two weeks.

Q. Had you got the personal property from Mr. Coan at this time?

A. No, sir.

Q. How much did you pay Rogen for the horse?

A. I cannot exactly tell; Rogen was owing us some. I guess I gave him about $400 besides the debt he owed us.

Q. How long had he owed you folks this claim before you bought the horse?

A. Not a great length of time; I cannot exactly say.

Q. Would it be a year or more?

A No, sir; it was only a short time.

Q. Where did you get the $400 which you paid Mr. Rogen for the horse?

A. I worked hard for it. I sold potatoes, and everything that I could sell off the place.

This testimony is not denied, and it fails to show that the property of Robert Horner was used to pay for the horse. A jury might, perhaps, infer that such was the case for a part of the consideration; but the proof fails to

reach that degree of certainty that will justify a reviewing court in reversing the judgment on that ground. The horse in question was not liable, therefore, for the debts of Robert Horner, and the judgment must be affirmed.

JUDGMENT AFFIRMED.

THE other Judges concur.